IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY DIVISION

| | | |
|---|---|---|
| JACOB LEWIS, | § § § | CIVIL ACTION NO. |
| Plaintiff, | § § | |
| VS. | § § | CIV-23-792-SLP |
| AMERICAN MORTGAGE SOURCE, LLC, | § § § | |
| AND | § § | |
| ASPIRE MORTGAGE COMPANY, LLC | § § § | |
| AND | § § | |
| KENT SAMPLES, | § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

Plaintiff JACOB LEWIS ("**Plaintiff**") complains of Defendants AMERICAN MORTGAGE SOURCE, LLC ("**AMS**"), ASPIRE MORTGAGE COMPANY, LLC ("**Aspire**") and KENT SAMPLES ("**Samples**")[1], as follows:

## PARTIES

1. Plaintiff is an individual resident and citizen of the State of Texas.

2. AMS is a limited liability company formed under the laws of the State of Oklahoma. Its principal place of business is in Guthrie, Logan County, Oklahoma. **It may be served with civil process in this action through its registered agent/officer Kent Samples at 9250 Ranchview Ct., Guthrie, Oklahoma, or wherever he may be found.**

3. Aspire is a limited liability company formed under the laws of the State of Oklahoma. Its principal place of business is in Guthrie, Logan County, Oklahoma. **It may be**

---

[1] Unless otherwise noted, AMS, Aspire and Samples will be referred to collectively herein as "**Defendants**."

**ORIGINAL COMPLAINT -1**

**served with civil process in this action through its registered agent/officer Kent Samples at 9250 Ranchview Ct., Guthrie, Oklahoma, or wherever he may be found.**

4. <u>Samples</u> is an individual resident and citizen of Guthrie, Oklahoma County, Oklahoma. **He may be served with civil process in this action 9250 Ranchview Ct., Guthrie, Oklahoma, or wherever he may be found.**

## JURISDICTION/VENUE

5. The Court has jurisdiction over this civil action arising under 28 U.S.C. § 1332(a)(1).

6. Venue in this District and Division is proper pursuant to 28 U.S.C. §1391(b) because a defendant to the action resides in this district/division, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and a substantial part of the property that is the subject of this action is situated in this district.

## FACTS

7. On May 20, 2020, in Oklahoma City, Defendant asked Plaintiff to invest <u>$100,000.00</u> in a company by the name of American Mortgage Source, LLC ("**AMS**").

8. AMS was in the business of offering mortgage brokerage services.

9. Defendant told Plaintiff he would receive at least 5-10% ownership investment interest in AMS.

10. On June 5, 2020, Defendant followed up with Plaintiff about the investment and putting pressure on Plaintiff to complete the transaction.

11. During the discussions, Plaintiff asked Defendant if there was anything in writing, like a memorandum of understanding or agreement to review. Defendant responded that one would be provided, as well as ownership certificates and related documents.

12. Also on June 5, 2020, Defendant held a phone call with Plaintiff and others in attendance and presented financial information, including a spreadsheet of potential profits based on loan volume at AMS.

13. Plaintiff continued to ask Defendant for documentation which he promised to provide about the investment.

14. Plaintiff signed a non-disclosure agreement in the hopes of receiving the promised financial information, spreadsheets and other documents related to the investment. Defendant represented that the information was in process, would be provided and was being reviewed by his attorneys.

15. Nevertheless, although Defendant represented that the promised documentation on the investment would be forthcoming, on June 30, 2020, no documents had been provided.

16. Plaintiff notified Defendant on June 30, 2020, that he was ready to invest and needed wiring instructions.

17. On July 24, 2020, Plaintiff finally received wire instructions from Defendant.

18. On July 24, 2020, Plaintiff made the first of four (4) wire transfers to Defendant of $25,000.00 for his $100,000.00 investment in AMS. Defendant confirmed receipt of the initial payment.

19. Plaintiff made the second installment payment for the investment in AMS on July 27, 2020, and notified Defendant of same. Defendant acknowledged receiving the second investment payment.

20. Plaintiff made the third and final installment payment for the investment in AMS on August 6, 2020, and notified Defendant of same. Defendant acknowledged receiving the second investment payment.

21. Plaintiff began working for and on behalf of AMS on or about January 2021.

22. On May 9, 2021, Defendant asked Plaintiff to complete an IRS W-4 tax withholdings form for AMS. The form was returned to Defendant on May 11, 2021.

23. Plaintiff completed loan transactions for AMS but was not being paid on time. For example, it took multiple months for Plaintiff to get paid on loans he closed.

24. On or about December 1, 2021, Plaintiff asked Defendant for a member certificate or other evidence of ownership in AMS by virtue of his investment. Defendant represented that it would be forthcoming within the month, and it was a priority saying, "we need to do this right".

25. In April and June 2022, Defendant paid certain personal expenses for himself out of an AMS account. On information and belief, Defendant used the bank and other financial accounts of AMS to pay his personal expenses.

26. In July 2022, Defendant requested that Plaintiff change his employment status with AMS to that of an independent contractor and be paid as an IRS 1099 employee. Up to this point, Plaintiff was under the impression that AMS was withholding payroll taxes from payments that had or were being paid for his employment at AMS. Plaintiff agreed to change his employment status to that of a 1099 employee on the representation that he would be paid back the payroll taxes that have already been withheld from his paychecks. Defendant agreed to this arrangement.

27. Plaintiff later discovered that Defendant withheld taxes from Plaintiff's paycheck but kept the withholdings for himself and did not pay the IRS, causing Plaintiff to suffer the consequential burden of making those payments on his own through arrangement with the IRS. These payments, amounting to $10,804.88, have never been repaid to Plaintiff by AMS.

28. In October 2022, Plaintiff, Defendant and Defendant's son, formed a company known as Aspire Mortgage Company, LLC ("**Aspire**") in part to avoid the tax issues created by

**ORIGINAL COMPLAINT -4**

Defendants failure to pay withholding taxes to the IRS and allow Plaintiff more control over and ownership in an actual business. The company was owned 80% by Defendant, 10% by Defendant's son and 10% by Plaintiff. The parties used money from AMS as the initial capital for Aspire.

29. Defendant failed to provide Plaintiff with an IRS 1099 form for his work for AMS in 2022 until over 2 months past the January 31, 2023, deadline.

30. On or about March 29, 2023, Defendant asked his son and Plaintiff to purchase his interest in Aspire.

31. In April 2023, Defendant, Defendant's son, and Plaintiff met to discuss buying Defendant's portion of Aspire. The meeting was not cordial and ended up with Defendant driving to Chase Bank and causing the transfer of all Aspire's funds to a bank account, which all 3 had access. He continued to close the entire Chase Bank account which was necessary to pay Aspire's expenses.

32. On April 5, 2023, Defendant notifies Plaintiff his employment with Aspire, as to which Plaintiff was a 10% member, was terminated. Defendant advised Plaintiff that he would be able to close out his pipeline of loans if he provided Defendant with a list of loans by noon on that day. Plaintiff provided the list. Defendant changed his email signature for Aspire as "Kent Samples CEO/Owner". He has never used this signature before.

33. On April 7, 2023, Defendant represented to Plaintiff that he would be paid by Wednesday of that week for all of Plaintiff's outstanding closed loans. He did not do so.

34. On May 5, 2023, Plaintiff requested payment for the loans he closed. All documentation for these purposes was provided. Defendant represented that Plaintiff would be paid for these closed loans on May 8, 2023. Defendant did not pay Plaintiff for these closed loans.

35. Again, on May 8, 2023, Defendant promised to pay Plaintiff on the closed loans, saying, "I always pay you." He did not pay the sum of $2,181.82.

36. On May 9, 2023, Defendant told Plaintiff that Plaintiff agreed to a lower than market commission on closed loans. Plaintiff and Defendant had on a 2% broker compensation in Texas due to the competitive market. Again, Defendant was doing anything he could to not pay Plaintiff. In fact, on May 10, 2023, Defendant claimed that he could deduct amounts he claimed Plaintiff owed him from commissions due Plaintiff; however, when asked, Defendant could not prove any offset claims existed.

37. Defendant then promised to pay the commissions due on closed loans on May 15, 2023. He failed to do so. To date, Plaintiff has not been paid for the closed loans.

## CONDITIONS PRECEDENT

38. All conditions precedent to recovery or action sought have been performed or have occurred.

## COUNT 1-DECLARATORY JUDGMENT
### [AMS]

39. Plaintiff re-alleges the averments above as though fully set forth herein.

40. At all times relevant to this action, Samples has held himself out and acted as the owner of AMS.

41. Further, on information and belief, he used AMS to pay his personal expenses.

42. At all times relevant to this action, Samples has used the bank and other financial accounts and resources of AMS for his own benefit and has acted in violation of his fiduciary duties owing to other members of AMS and has caused AMS to fail to pay the debt owing to creditors of AMS, including Plaintiff.

43. Further, Samples, as the majority and managing member of AMS failed to maintain the corporate formalities of AMS and caused AMS to fail to comply with all legal and regulatory requirements applicable.

44. Plaintiff requests that the Court issue a declaratory judgment that (a) Aspire is the *alter ego* of AMS and that, as a result, all liabilities of AMS are the personal liabilities of Samples and/or (b) Samples is the *de facto* owner in his individual capacity of AMS and, therefore, personally liable for its debts.

45. Plaintiff requests recover of his costs in having to bring this declaratory judgment claim as may be permitted by applicable law.

## COUNT 2-DECLARATORY JUDGMENT
## [ASPIRE]

46. Plaintiff re-alleges the averments above as though fully set forth herein.

47. At all times relevant to this action, Samples has held himself out and acted as the owner of Aspire.

48. Further he has used Aspire to pay his personal expenses.

49. At all times relevant to this action, Samples has used the bank and other financial accounts and resources of Aspire for his own benefit and has acted in violation of his fiduciary duties owing to other members of Aspire and has caused Aspire to fail to pay the debt owing to creditors of Aspire, including Plaintiff.

50. Further, Samples, as the majority and managing member of Aspire, failed to maintain the corporate formalities of Aspire and caused Aspire to fail to comply with all legal and regulatory requirements applicable.

51. Plaintiff requests that the Court issue a declaratory judgment that (a) Aspire is the *alter ego* of Samples and that, as a result, all liabilities of Aspire are the personal liabilities of

Samples and/or (b) Samples is the *de facto* owner in his individual capacity of Aspire and, therefore, personally liable for its debts.

52. Plaintiff requests recovery of his costs in having to bring this declaratory judgment claim as may be permitted by applicable law.

## COUNT 3-BREACH OF CONTRACT
### [AMS and Samples]

53. Plaintiff re-alleges the averments above as though fully set forth herein.

54. AMS and Samples agreed to make Plaintiff an invested member of AMS.

55. Plaintiff paid AMS/Samples $100,000 to become an invested member of AMS.

56. AMS/Samples failed to take all actions necessary to cause Plaintiff to be an invested member of AMS.

57. AMS/Samples used the money paid by Plaintiff for a invested membership interest in AMS for their own benefit.

58. AMS/Samples breached the agreement they had with Plaintiff to cause him to be an invested member of AMS.

59. Plaintiff was required to pay AMS/Samples the amount of $10,804.88 for taxes on wages that AMS/Samples were required to pay on behalf of the Plaintiff to the IRS.

60. AMS/Samples failed to cause membership certificates to be issued to Plaintiff which would indicate that he was a member of AMS.

61. AMS/Samples are not excused from its breach of the Agreement.

62. As a proximate and direct result of AMS/Samples's breach, Plaintiff has suffered damages in the amount of not less than the amount of $100,000.00, together with prejudgment interest thereon, as permitted by applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

**ORIGINAL COMPLAINT -8**

## COUNT 4-BREACH OF CONTRACT
### [Aspire and Samples]

63. Plaintiff re-alleges the averments above as though fully set forth herein.

64. Aspire and Samples agreed to make Plaintiff an invested member of Aspire.

65. Plaintiff worked for Aspire as an employee and invested owner.

66. Samples caused Aspire to withhold money from Plaintiff's wages for tax purposes.

67. Further, Plaintiff obtained and closed loans for Aspire/Samples for which he was not paid a commission or broker fee.

68. Aspire/Samples owe Plaintiff not less than $2,181.82 for commissions/broker fees resulting from loans obtained and closed by Plaintiff for Aspire/Samples.

69. Samples/Aspire are not excused from their breach of contract.

70. As a proximate and direct result of Samples/Aspire's breach, Plaintiff has suffered damages in the amount of not less than the amount of $2,181.82, plus 10% of the amount of $28,019.82, or $2,583.80, for a total of $4,765.62, together with prejudgment interest thereon, as permitted by applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

## COUNT 5 – CONVERSION
### [ALL DEFENDANTS]

71. Plaintiff re-alleges the averments above as though fully set forth herein.

72. The money owed Plaintiff by Defendants, jointly and severally, which is the subject of this action were earned and owned by the Plaintiff.

73. Defendants wrongfully took possession of the funds at issue in this action without Plaintiff's permission and denied Plaintiff access to the funds.

74. Plaintiff did not consent to Defendants' use of the funds.

**ORIGINAL COMPLAINT -9**

75. Defendants converted the funds to their own benefit in violation of Plaintiff's right to the funds.

76. As a proximate and direct result of their conversion of the funds at issue in this action, Plaintiff has suffered damages in the amount of not less than the amount of **$115,570.51,** together with prejudgment interest which may accrue on such amounts, as permitted by the Agreement and/or applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

## COUNT 6 – CIVIL THEFT
## [ALL DEFENDANTS]

77. Plaintiff re-alleges the averments above as though fully set forth herein.

78. The funds which are the subject of this action are owned by the Plaintiff.

79. Defendants wrongfully took possession of the funds at issue in this action without Plaintiff's permission and has denied Plaintiff access to the funds.

80. Defendants have used the funds for their personal benefit.

81. Plaintiff did not consent to Defendants' use of the funds.

82. Defendants are liable to Plaintiff, jointly and severally, for civil theft pursuant to 21 OK Stat. § 21-1533.1 (2014).

83. As a proximate and direct result of Defendants' breach civil theft, Plaintiff has suffered damages in the amount of not less than the amount of **$115,570.51**, together with prejudgment interest which may accrue on such amounts, as permitted by the Agreement and/or applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

## COUNT 7 - FRAUD
## (ALL DEFENDANTS)

84. Plaintiff re-alleges the averments above as though fully set forth herein.

**ORIGINAL COMPLAINT -10**

85. Defendants caused Plaintiff to believe that AMS would make Plaintiff a member for consideration paid.

86. Defendants caused Plaintiff to believe the AMS would withhold taxes from wages and pay the Internal Revenue Service all taxes withheld.

87. Defendants caused Plaintiff to believe that Aspire would pay commission and/or broker fees for loans brought in by Plaintiff.

88. Defendants' representations above were material to Plaintiff entering into transactions at issue with Defendants.

89. Defendants misrepresented their intentions with respect to the transactions at issue.

90. Plaintiff relied on the representations of performance and intentions of Defendants to his detriment.

91. The representations of Defendants at issue in this action were false.

92. Defendants, without any explanation, justification, cause or excuse, caused the failure of AMS and Aspire to fail to pay Plaintiff the funds at issue and/or otherwise divert such funds to their own benefit.

93. Plaintiff would not have advanced the funds at issue or worked for Aspire had he known the representations were untrue.

94. Defendants conduct as set forth herein evidences knowledge aforethought to not adhere to the terms of the agreements between the parties.

95. Plaintiff had no knowledge beforehand that Defendants intended to not abide by and adhere to the terms of the agreements between the parties.

96. Plaintiff relied on Defendants representations by entering into the agreements between the parties that Defendants fully intended to abide by the terms of the agreements to Plaintiff's detriment.

97. As a proximate and direct result of Defendants' failure to adhere to the terms of the agreements between the parties and use the funds at issue for their own benefit, Plaintiff has suffered damages in the amount of not less than the amount **$115,570.51**, together with prejudgment interest which may accrue on such amounts, as permitted by the Agreement and/or applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

98. Further, Plaintiff seeks to recover exemplary/punitive damages from Defendants, jointly and severally, as further damages for the fraud committed by Defendants on Plaintiff in an amount determined by the trier-of-fact.,

## COUNT 8 - BREACH OF CONSTRUCTIVE TRUST (ALL DEFENDANTS)

99. Plaintiff re-alleges the averments above as though fully set forth herein.

100. Entities do not act on their own.

101. An entity acts or is caused to act through its owners, shareholders, officers, and directors.

102. Samples was, at all relevant times, an owner and member AMS.

103. Samples was, at all relevant times, an owner and member of Aspire.

104. Samples caused AMS, by fraud and other devices, to steal, convert and misuse the funds at issue in this action in violation of Plaintiff's rights therein.

105. Samples caused Aspire, by fraud and other devices, to steal, convert and misuse the funds at issue in this action in violation of Plaintiff's rights therein.

**ORIGINAL COMPLAINT -12**

106. Defendants possess the funds at issue in this action which are owned by Plaintiff.

107. Alternatively, Defendants have caused the use of the money at issue in this action to Defendants own benefit.

108. Defendants hold such money in constructive trust for the benefit of Plaintiff.

109. Defendants have breached the constructive trust owing by them to Plaintiff.

110. As a proximate and direct result of the breaches of the Agreement, as noted herein Plaintiff has suffered damages in the amount of not less than the amount of **$115,570.51**, together with prejudgment interest which may accrue on such amounts, as permitted by the Agreement and/or applicable law, costs of collection, including attorneys' fees and expenses, and costs of court.

## COUNT 9 -
## ACCOUNTING
## (ALL DEFENDANTS)

111. Plaintiff re-alleges the averments above as though fully set forth herein.

112. Plaintiff request that Defendant be required to account for the use, disposition, and present location of all funds at issue in this action.

**WHEREFORE**, based on the foregoing, Plaintiff respectfully seeks the following:

a. A judgment in favor of Plaintiff and against Defendants, jointly and severally, for all sums determined to be owing by Defendants to Plaintiff including but not limited to the principal sum of **$115,570.51**, together with (1) pre-judgment interest which may accrue on such amounts, as permitted by applicable law, (2) costs of collection, including reasonable attorneys' fees and expenses, and costs of court as permitted by applicable law, and (3) as determined by the trier-of-fact to be appropriate, exemplary/punitive damages; and

**ORIGINAL COMPLAINT -13**

      b. An accounting of the use, disposition, and present location of the funds at issue in this action;

      c. Post-judgment interest on the foregoing amounts as permitted by applicable law; and

      d. Such other and further relief as the Court deems appropriate under the circumstances.

Dated: September 8, 2023.

Respectfully submitted,

AKERLY LAW PLLC

By:   */s/ Bruce W. Akerly*
       Bruce W. Akerly
       Texas Bar No. 00953200

2785 Rockbrook Drive, Suite 201
Lewisville, Texas 75067
(469) 444-1878 Main
(469) 444-1864 Direct
(469) 444-1829 Facsimile
bakerly@akerlylaw.com

ATTORNEYS FOR PLAINTIFF
JACOB LEWIS

**ORIGINAL COMPLAINT -14**